UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANTE D. GUY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00543-JMS-MJD |
| | ) | |
| JUSTIN OTTINO and JASON BROWN, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

*Pro se* Plaintiff Dante D. Guy seeks recovery pursuant to 42 U.S.C. § 1983 for an alleged unlawful search and seizure that violated his rights under the Fourth Amendment, which was conducted by Indianapolis Metropolitan Police Department ("IMPD") Officer Jason Brown and Parole Agent Justin Ottino. [Filing No. 1 at 1.] Officer Brown and Parole Agent Ottino have each filed Motions for Summary Judgment. [Filing No. 38; Filing No. 41.] Mr. Guy failed to respond to both Defendants' Motions, and the time to do so has passed. For the following reasons, Defendants' Motions for Summary Judgment are granted.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "'Summary judgment is not a time to be coy.'" *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of*

1

*Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the nonmoving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh the evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.*  The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those

facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). As discussed further below, because Mr. Guy has not responded to the Motions for Summary Judgment, the Court accepts each of the properly asserted facts in Defendants' Motions as undisputed.

**A. The Parole Agreements and the Parole Violations**

Prior to the events at issue, Mr. Guy was convicted of four felonies: (1) Armed Robbery, Cause No. 49G06-0404-FB-061745; (2) Robbery Resulting in Bodily Injury, Cause No. 49G06-0912-FB-102255; (3) Battery Resulting in Bodily Injury, Cause No. 48C04-1205-FC-000984; and (4) Battery Against a Public Safety Officer, Cause No. 49G03-1505-F5-015545.[1] [Filing No. 41-2 at 2.]

*1. The Parole Agreements*

On July 23, 2020, Mr. Guy was granted parole from incarceration, and he entered into a Conditional Parole Release Agreement (the "Parole Agreement"), which set forth the terms of his parole. [Filing No. 38-3 at 14-15; Filing No. 41-1 at 14-15.] On August 12, 2020, Mr. Guy signed

---

[1] The Court is permitted to take judicial notice of public records, such as state court documents. *E.g., Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020).

a second Parole Agreement, which reaffirmed the parole conditions provided in his prior Parole Agreement and acknowledged that a parole officer had explained the "above statement of parole rules, regulations, and conditions of parole" to Mr. Guy.  [Filing No. 38-3 at 15; Filing No. 41-1 at 15.]  The second Parole Agreement was accompanied by the Supervision Orientation Handbook, which included "the definitions, procedures, and requirements which constitute Parole."  [Filing No. 38-3 at 2; Filing No. 41-1 at 2.]  Mr. Guy signed and acknowledged all three documents. [Filing No. 38-3 at 12-15; Filing No. 41-1 at 12-15.]

Pursuant to terms provided in the Parole Agreements and the Supervision Orientation Handbook, Mr. Guy agreed that, among other things, the use of controlled substances, the possession of a firearm, and the failure to "contact [his] supervising parole agent and advise of any official contact with any law enforcement officer . . . immediately but no later than the next business day following the contact" were each a violation of his parole.  [Filing No. 38-3 at 7-8; Filing No. 38-3 at 12-15; Filing No. 41-1 at 7-8; Filing No. 41-1 at 12-15.]  Additionally, Mr. Guy agreed that he remained "legally in the custody of the Department of Correction" and that he was subject to search, without a warrant or prior notice, if a parole agent or law enforcement officer has "reasonable cause to believe that [he was] in violation of, or in imminent danger of being in violation of the conditions of [his] parole."  [Filing No. 38-3 at 15; Filing No. 41-1 at 15.]  More specifically, the Supervision Orientation Handbook provides that:

> Your agent may also search you, your residence, and any real or personal property found to be reasonably under your control.  It is imperative that you understand that your Supervising Parole Agent has the right to confiscate any contraband located on your person, in your car, or residence, as outlined above.  This may then be turned over to the authorities for criminal proceedings and/or for a violation hearing.

[Filing No. 38-3 at 6; Filing No. 41-1 at 6.]

4

*2. The Parole Violations*

While on parole, Mr. Guy tested positive for controlled substances on three separate occasions. [Filing No. 38-4 at 1.] Around the same time, IMPD Officers contacted Mr. Guy about a homicide investigation. [Filing No. 38-4 at 1; Filing No. 41-2 at 1.] During that interaction, Mr. Guy was interviewed by IMPD Officers, and his home was searched. [Filing No. 38-4 at 1; Filing No. 41-2 at 1.] Mr. Guy did not report this contact with law enforcement to his parole agent. [Filing No. 38-4 at 1; Filing No. 41-2 at 1.]

**B. The Search, Seizure, and Arrest of Mr. Guy**

On January 13, 2021, Parole Agent Ottino received a phone call from an IMPD detective informing him that IMPD had interviewed Mr. Guy and that Mr. Guy was a suspect in a homicide investigation. [Filing No. 38-1 at 1-2; Filing No. 41-2 at 1.] Parole Agent Ottino confirmed that Mr. Guy had failed to report his contact with IMPD. [Filing No. 38-2 at 2.] Parole Agent Ottino also was aware that Mr. Guy had tested positive for a controlled substance. [Filing No. 38-2 at 2.] Parole Agent Ottino requested a Warrant for Retaking Offender (the "Warrant") for Mr. Guy's arrest, which was granted the same day. [Filing No. 38-2 at 1-2.] As a member of IMPD's Indianapolis Parole Accountability Team ("InPAcT"),[2] Officer Brown was asked to assist Parole Agent Ottino in effectuating the Warrant. [Filing No. 41-2 at 1.]

*1. The Search and Seizure*

That same day, Mr. Guy entered an IMPD Office to meet with his reentry caseworker. [Filing No. 38-1 at 1; Filing No. 41-2 at 1.] Parole Agent Ottino approached Mr. Guy and asked him to go to a room in the IMPD Office frequently used by the InPAcT Team and parole officers.

---

[2] The Court utilizes the capitalization convention employed by IMPD, consistent with the record evidence.

[Filing No. 41-2 at 1.]  Mr. Guy cooperated, and once inside, Parole Agent Ottino informed Mr. Guy that he was being detained and told him to "stand up, turn around, and place his hands behind his back."  [Filing No. 38-2 at 4; Filing No. 41-2 at 1.]  Mr. Guy "stood up, faced towards [Parole Agent Ottino,] and stated he wanted to speak to his lawyer."  [Filing No. 38-2 at 4.]  Mr. Guy was again asked to place his hands behind his back.  [Filing No. 38-2 at 4.]  Officer Brown then grabbed Mr. Guy's right arm as Parole Agent Ottino grabbed Mr. Guy's left arm to detain Mr. Guy.  [Filing No. 38-2 at 4.]

Mr. Guy then "sat down in [a] chair while handcuffed and started moving around in his chair."  [Filing No. 41-2 at 1.]  Officer Brown and Parole Agent Ottino observed Mr. Guy's movements, and Parole Agent Ottino instructed Mr. Guy to "stand up so he could search him for officer safety, per their policy."  [Filing No. 41-2 at 2.]  As Parole Agent Ottino searched Mr. Guy's right side, he felt Mr. Guy "move his hands to the left side of his body, near his left front coat pocket."  [Filing No. 38-2 at 4.]  Parole Agent Ottino then grabbed both of Mr. Guy's arms and "felt around [his] left front coat pocket . . . and noticed a bulky item."  [Filing No. 38-2 at 4.]  Parole Agent Ottino reached into Mr. Guy's jacket and removed a black .40 caliber Taurus pistol, model T140 G2 bearing serial number SIS85569.  [Filing No. 38-2 at 4; Filing No. 41-2 at 2.]  Mr. Guy responded, "that's not mine."  [Filing No. 41-2 at 2.]  Officer Brown subsequently determined that the firearm had previously been reported stolen.  [Filing No. 41-2 at 2.]  Mr. Guy later stated: "I picked that gun up out of the street and was going to take it to the church at 2:30 to scrap it.  I didn't want to call 911 because I didn't know how it would go."  [Filing No. 41-2 at 2.]  Parole Agent Ottino continued to search Mr. Guy and removed several items from his person, including an open knife from Mr. Guy's front left pants pocket.  [Filing No. 38-2 at 4; Filing No. 41-2 at 2.]

   *2. The Arrest and Subsequent Conviction*

Mr. Guy was then arrested and subsequently charged with Unlawful Possession of a Firearm by a Serious Violent Felon, in violation of Ind. Code § 35-47-4-5. [Filing No. 41-2 at 2.] In connection with his criminal charges, Detective Rebecca Uberta wrote an Affidavit for Probable Cause, which detailed the circumstances of Mr. Guy's arrest. [Filing No. 41-2 at 1-2.] Mr. Guy entered into a Plea Agreement on March 24, 2022. [Filing No. 41-3 at 1-3.] As part of the Plea Agreement, Mr. Guy acknowledged that his guilty plea "constitutes an admission of the truth of all facts alleged" in his charging information, including Detective Uberta's Affidavit for Probable Cause. [Filing No. 41-3 at 2.]

   **C. This Lawsuit**

Mr. Guy filed a Complaint on March 18, 2022, alleging claims under the Fourth and Fifth Amendments against Officer Brown and Parole Agent Ottino. [Filing No. 1.] The Court initially stayed Mr. Guy's claims according to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), until the completion of Mr. Guy's underlying criminal case. [Filing No. 5.] Upon motion by Mr. Guy, the Court reopened this case and screened Mr. Guy's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). [Filing No. 7; Filing No. 9.]

The Court's Screening Order determined that Mr. Guy's claims implicate the Fourth Amendment in three ways: (1) the search of his person; (2) the seizure of his firearm; and (3) his confinement while being searched. [Filing No. 9 at 5.] Because Mr. Guy alleged that Officer Brown and Parole Agent Ottino lacked a sufficient basis to conduct a search and seizure, his Fourth Amendment claims were deemed sufficient to proceed. [Filing No. 9 at 6.] However, the Court dismissed Mr. Guy's claims that Officer Brown and Parole Agent Ottino violated his Fifth Amendment right to due process of law. [Filing No. 9 at 7.]

The Court issued a Scheduling Order on August 10, 2022, which established a dispositive motion deadline of April 7, 2023. [Filing No. 23.] Defendants timely filed their Motions for Summary Judgment on Mr. Guy's remaining claims. [Filing No. 38; Filing No. 41.] Consistent with Local Rule 56-1(k), both Defendants notified Mr. Guy of his right to respond and submit evidence in opposition to their Motions. [Filing No. 40; Filing No. 43.] Mr. Guy, in turn, requested additional time to file his own motion for summary judgment. [Filing No. 44.] The Court granted Mr. Guy's request and reminded Mr. Guy that any response to Defendants' Motions for Summary Judgment was due by May 8, 2023. [Filing No. 45.] Mr. Guy did not file a motion for summary judgment or respond to Defendants' Motions for Summary Judgment.

### III.
#### DISCUSSION

Defendants argue that Mr. Guy's claims fail as a matter of law because the search and seizure at issue were lawful for two reasons: (1) the search and seizure of Mr. Guy were lawful under the terms of the Parole Agreements and the Warrant; and (2) even if the conduct at issue was not lawful, Defendants are entitled to qualified immunity. [Filing No. 39; Filing No. 42.] The Court first addresses Mr. Guy's failure to respond before turning to Defendants' arguments.

#### A.      **Failure to Respond**

As noted above, Mr. Guy has not responded to Defendants' Motions, and the time to do so has passed. The Court may therefore summarily rule on Defendants' Motions, pursuant to Local Rule 7-1(c)(4), as Mr. Guy's silence results in the waiver of any argument in opposition to Defendants' Motions. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Furthermore, Mr. Guy's lack of response means that he has conceded Defendants' version of events, and the Court must resolve Defendants' Motions on the evidence submitted by Defendants. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.

2003) ("Failure to respond by the nonmovant as mandated by the local rules results in an admission."). The Court continues to apply the above-articulated summary judgment standard, but Mr. Guy's failure to comply with the Local Rules in this respect "reduc[es] the pool" from which facts and inferences may be drawn. *See Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). With these standards in mind, the Court turns to Defendants' arguments in support of summary judgment below.

### B. The Legality of the Search and Seizure

Parole Agent Ottino argues that the search of Mr. Guy was done pursuant to a lawful warrant. [Filing No. 39 at 4.] However, even if the Court were to set aside the Warrant, Defendants argue that the search and seizure of Mr. Guy were lawful according to the terms and conditions of Mr. Guy's parole. [Filing No. 39 at 4-5; Filing No. 42 at 5.] Specifically, Defendants contend that Mr. Guy agreed that "he remained in the custody of the Department of Corrections and was subject to search if he was in violation of or in danger of violating the conditions of his parole." [Filing No. 42 at 5; *see also* Filing No. 39 at 5.] Defendants argue that Mr. Guy committed numerous violations of the Parole Agreements, including multiple drug violations and unreported contact with police. [Filing No. 42 at 5; *see also* Filing No. 39 at 5.] Finally, Officer Brown argues that Mr. Guy admitted that he "violated his parole" and "admitted that these violations were the reason for his detention and search." [Filing No. 42 at 5.]

As discussed above, Mr. Guy did not file a response.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Supreme Court's "general Fourth Amendment approach" is to "examine the totality of the circumstances" to determine whether the conduct at issue was "reasonable within the meaning of

9

the Fourth Amendment. *Samson v. California*, 547 U.S. 843, 848 (2006) (cleaned up). As a general rule, warrantless searches are "*per se* unreasonable under the Fourth Amendment unless one of few recognized exceptions applies." *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015). However, "context matters under the Fourth Amendment" and what is reasonable depends on specific circumstances of a search. *United States v. Wood*, 16 F.4th 529, 538 (7th Cir. 2021).

Relatedly, seizures under the Fourth Amendment are "reasonable only if based on probable cause to believe that the individual has committed a crime." *Lewis v. City of Chi*., 914 F.3d 472, 476 (7th Cir. 2019) (quoting *Bailey v. United States*, 568 U.S 186, 192 (2013)). Probable cause to justify an arrest exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cty., Ill*., 705 F.3d 706, 714 (7th Cir. 2013). The Court may determine that "probable cause existed as a matter of law when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (cleaned up); *accord Young v. Indianapolis Metro. Police Dep't,* 2023 WL 3848377, at *3 (S.D. Ind. June 6, 2023).

Accordingly, the Court must determine if Defendants had a reasonable basis to search and seize Mr. Guy. When reviewing the record in the light most favorable to Ms. Guy, the Court finds that Defendants' conduct was lawful under the circumstances.

    1. *The Warrant*

The first issue precluding Mr. Guy's recovery for a warrantless search and seizure is that Defendants did, in fact, have a warrant for Mr. Guy's arrest. [Filing No. 38-1 at 1.] "[A] person who is arrested pursuant to a facially valid warrant . . . generally has no claim for an

unconstitutional deprivation of liberty under Section 1983." *Mark v. Furay*, 769 F.2d 1266, 1268 (7th Cir. 1985) (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).  Moreover, the Supreme Court has instructed that arresting officers "may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

Here, Defendants arrested Mr. Guy pursuant to the Warrant which "ordered that [Mr. Guy] be arrested and retaken" until he could be "placed in the custody of an agent of the Indiana Department of Correction."  [Filing No. 38-1 at 1.]  Mr. Guy does not contest the validity of the Warrant, and there is no evidence in the record from which a reasonable jury could find that the Warrant was invalid.  Incident to arrest, the arresting officers may search the "'area from within which [the arrestee] might gain possession of a weapon or destructible evidence.'" *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (*quoting Chimel v. California*, 395 U.S. 752, 763 (1969)).  Given that Mr. Guy was actively reaching towards the firearm in his jacket pocket at the time of his arrest, there can be little debate that Mr. Guy's jacket was within his reach and control.  [*See* Filing No. 38-2 at 4.]  Accordingly, Defendants were permitted to search Mr. Guy in that area and seize the firearm once discovered.  *See, e.g., United States v. Salazar*, 69 F.4th 474, 477 (7th Cir. 2023) (holding search of jacket within defendant's reach a reasonable and lawful search incident to arrest).  Accordingly, the search of Mr. Guy and the seizure of his firearm were lawful.[3]

---

[3] Although only Parole Agent Ottino points to the Warrant as a basis for summary judgment, Officer Brown's conduct is equally permissible under the Warrant.  Because Mr. Guy had an adequate opportunity to respond to Parole Agent Ottino's arguments regarding the Warrant, the Court may impute the arguments made by Parole Agent Ottino to Officer Brown to the extent the argument is equally applicable to both Defendants.  *See Malak v. Associates Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (holding that "where one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate

*2. The Parole Agreements*

Even if the Court were to set aside the Warrant, the Parole Agreements further authorized the conduct at issue. The Supreme Court has explained that "parolees have fewer expectations of privacy" because "'[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.'" *Samson,* 547 U.S. at 850 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)); *see also United States v. Beechler*, 68 F.4th 358, 366 (7th Cir. 2023) (holding that parolees "have lowered expectations of privacy, not merely because of their status but also because the government usually extends the benefits of additional freedom in exchange for an agreement to comply with certain requirements"). When considering how the conditions of parole impact a parolee's right to privacy, the Seventh Circuit has explained that a "parole agreement's terms do not directly shape the contours of Fourth Amendment reasonableness." *Wood*, 16 F.4th at 539. However, the "fact that a parolee signed an agreement waiving Fourth Amendment rights is certainly a 'salient circumstance' in the examination of the totality of the circumstances." *Beechler*, 68 F.4th at 366 (quoting *United States v. Knights*, 534 U.S. 112, 118–19 (2001)).

In this case, Mr. Guy's parole agreements weigh heavily into the totality of the circumstances analysis. Under the terms of the Parole Agreements, Mr. Guy explicitly consented to be searched if law enforcement officers had "reasonable cause" to believe that he violated a condition of his parole. [Filing No. 38-3 at 15; Filing No. 41-1 at 15.] Based on the undisputed evidence, there can be no debate that the search of Mr. Guy fell squarely within the express conditions of the Parole Agreements. Mr. Guy does not dispute that he tested positive for

---

opportunity to argue in opposition to the motion"); *accord Smietana v. Stephens*, 2023 WL 3737720, at *1 (N.D. Ill. May 30, 2023).

controlled substances or that he failed to report that he was interviewed by IMPD officers. The Parole Agreements repeatedly and unambiguously state that these actions violate the terms of Mr. Guy's parole. [Filing No. 38-3 at 7-8; Filing No. 38-3 at 12-15; Filing No. 41-1 at 7-8; Filing No. 41-1 at 12-15.] Moreover, both Defendants had knowledge of Mr. Guy's violations of the Parole Agreement prior to the events at issue. [Filing No. 38-1 at 2; Filing No. 41-2 at 1.] Accordingly, there is no evidence from which a reasonable jury could conclude that Officer Brown and Parole Agent Ottino lacked "reasonable cause" to believe that Mr. Guy violated the Parole Agreements. Accordingly, the warrantless search of Mr. Guy was permissible under the Fourth Amendment. *Id.* (citing *United States v. Price*, 28 F.4th 739, 744, 750 (2022)).

Similarly, the seizure of Mr. Guy's firearm was lawful under the terms of the Parole Agreements. Possession of a firearm is explicitly a violation of Mr. Guy's parole, and this fact is emphasized repeatedly throughout the Parole Agreements and the Supervision Orientation Handbook. [*See, e.g.,* Filing No. 38-3 at 5 ("I understand that carrying, dealing in, or possessing firearms, explosive devices or deadly weapons is a violation of my parole release agreement."); Filing No. 38-3 at 6 ("Without a waiver from the Bureau of Alcohol, Tobacco and Firearms, convicted felons may never possess a firearm without being in violation of the law, even if the firearm is not registered to them."); Filing No. 38-3 at 14 (same); Filing No. 38-3 at 15 (same).] Mr. Guy agreed that his parole agent had "the right to confiscate any contraband located on [his] person" during a search pursuant to the Parole Agreements. [Filing No. 38-3 at 6.] Mr. Guy further acknowledged and agreed that any contraband discovered on his person "may then be turned over to the authorities for criminal proceedings and/or for a violation hearing." [Filing No. 38-3 at 6.] Based on the undisputed evidence, this is precisely what Defendants did upon discovering that Mr. Guy was in possession of a firearm in violation of the terms of his parole. [Filing No. 38-2 at 4;

Filing No. 41-2 at 2.] Accordingly, the Court finds that the seizure of Mr. Guy's firearm was consistent with the terms of his Parole Agreements and, therefore, did not violate Mr. Guy's Fourth Amendment rights.

### 3. *Mr. Guy's Failure to Heed Defendants' Commands*

Finally, Defendants were permitted to conduct a pat down of Mr. Guy and seize his firearm based on his failure heed their commands. The record establishes that Mr. Guy repeatedly failed to comply with audible commands by Parole Agent Ottino once inside the room utilized by IMPD InPAcT officers. [*See, e.g.,* Filing No. 38-2 at 4 (Mr. Guy repeatedly failing to place his hand behind his back as requested by Parole Agent Ottino).] Additionally, Mr. Guy continued to reach towards his jacket pocket, where a firearm was ultimately recovered, after being handcuffed. [Filing No. 38-2 at 4.] These actions, in light of the fact that Mr. Guy was a suspect in a murder investigation, were sufficient to give Defendants "reasonable grounds to believe" that Mr. Guy was "armed and dangerous" and that it was "necessary for the protection of [Defendants] and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized." *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also United States v. Radford*, 39 F.4th 377, 387 (7th Cir. 2022) (noting that reports of criminal activity coupled with the defendant's "nervous behavior and alarming movements, and his failure to comply with the officer's directives all justified the officer's decision to search for weapons"); *United States v. Colbert*, 54 F.4th 521, 529 (7th Cir. 2022) (holding that the failure or refusal to comply with a police officer's order coupled with nervous behavior may support a pat down for weapons under the circumstances). Accordingly, Defendants were justified in commencing a pat down of Mr. Guy and seizing his firearm for officer safety under the circumstances.

Based upon the Warrant authorizing Mr. Guy's arrest, the terms of the Parole Agreements, and Mr. Guy's failure to comply with law enforcement commands, the Court finds that the search and seizure at issue were lawful under the circumstances. Accordingly, Officer Brown and Parole Agent Ottino did not violate Mr. Guy's Fourth Amendment rights.

### C.     The Application of Qualified Immunity

Even if Defendants had violated Mr. Guy's Fourth Amendment rights, Defendants argue that they are entitled to qualified immunity because their actions were not clearly unconstitutional. [Filing No. 39 at 7; Filing No. 42 at 6.] Specifically, Defendants argue that "[a] reasonable officer, aware of a parolee's lesser expectations of privacy and that [Mr. Guy] had violated conditions of his parole, would believe searching [Mr. Guy] to be constitutional." [Filing No. 42 at 6-7; *see also* Filing No. 39 at 7.] Additionally, Officer Brown argues that "it is not clearly unconstitutional to assist a parole officer in executing a warrant." [Filing No. 42 at 6.]

As discussed above, Mr. Guy did not file a response.

"'[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Pierner-Lygte v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. Feb. 23, 2023) (quoting *District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 589 (2018)). "If either inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The application of qualified immunity in this case turns on the first question in the analysis. Because the Court has determined that Officer Brown and Parole Agent Ottino did not violate Mr. Guy's Fourth Amendment rights, they are entitled to qualified immunity. *See Pearson*, 555 U.S. at 243–44; *Archer v. Chisholm*, 191 F. Supp. 3d 932, 951 (E.D. Wis. 2016), aff'd 870 F.3d 603 (7th Cir. 2017) ("Because the plaintiff has failed to adequately plead a Fourth Amendment violation related to the scope of the search, the defendants are entitled to qualified immunity on this claim as well.") Accordingly, Defendants are entitled to summary judgment and the Court need not address what a reasonable officer should have known at the time of Mr. Guy's arrest. *Gibbs,* 755 F.3d at 537.

For the reasons discussed above, Mr. Guy has failed to establish that his Fourth Amendment rights were violated and, therefore, his claims under Section 1983 fail. Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment.

## IV.
### CONCLUSION

As the Seventh Circuit has made clear, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Diadenko v. Folino,* 741 F.3d 751, 757-58 (7th Cir. 2013) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Mr. Guy has failed to meet his burden at summary judgment, and for the reasons discussed above, the Court **GRANTS** Parole Agent Ottino's Motion for Summary Judgment, [38], and **GRANTS** Officer Brown's Motion for Summary Judgment, [41]. Final judgment shall issue accordingly.

Date: 7/24/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**
Dante D. Guy
121108
Miami Correctional Facility
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810